UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD VICKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-4014** |
| **CASEY MCVEA** | **SECTION "A"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.  On November 5, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*[1] and its progeny with the plaintiff participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.    Factual and Procedural Background

#### A.    The Complaint

The plaintiff, Donald Vicks ("Vicks"), is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.  Vicks filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. §1983 against the defendants, Dr. Casey McVea and Nurse Leslie Temples asserting that Temples dispensed the wrong HIV medication to him from January

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 12.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

14, 2015 through January 28, 2015,[3] when he discovered the error. Temples admitted the negligence and removed the incorrect drug from his medication supply.

Vicks contends that he has since suffered multiple adverse side effects from the wrong medication. He also alleges that since this incident, the medical department has failed to properly address his multiple symptoms. He also asserts that Dr. McVea failed in his duty to assure that he was dispensed the correct prescribed medication.

Attached to his complaint are copies of his grievance complaint to prison officials following the medication incident and numerous sick call requests addressing multiple medical complaints. In grievance RCC-2015-97, Vicks complained that he was given the wrong medication and had not seen a doctor before or after being given the medication.[4] He claimed to have had a bad allergic reaction to the medication in the form of more sores causing him pain. In the first step response issued March 2, 2015, the unit head advised Vicks that, while the incident was unfortunate, the Infection Control Physician Dr. Besch determined that the Norvir[5] he was given in error would not cause any type of adverse reaction in combination with his other medications and that Vicks's health was not in jeopardy.[6]

In the second step response received from the office of the Secretary of the Louisiana Department of Public Safety and Corrections, Vicks again was advised that the incident was an

---

[3]Vicks would later testify that the period ran from January 14, 2015 through January 20, 2015, and the medicine was corrected on January 21, 2015 by Leslie Temples.

[4]Rec. Doc. No. 6-2, p.1, Grievance Complaint dated 2/10/15.

[5]Norvir is a brand name for ritonovir, which is used with other HIV medications to help control the HIV infection and reduce the chance of complications. http://www.webmd.com/.

[6]Rec. Doc. No. 6-3, p.1, First Step Response dated 3/2/15.

unfortunate error that would not be repeated and that the Norvir would not have an adverse effect on his condition.[7]

Vicks also provided copies of certain sick call requests in which he complained of various discomforts between January and April, 2015 as summarized here:

> January 18, 2015 - Vicks complained of sores on his back that were bothering him. (Rec. Doc. No. 6-5).
>
> January 20, 2015 - Vicks complained that his HIV medication had been discontinued. (Rec. Doc. No. 6-6).
>
> January 30, 2015 - The form is blank but marked as an emergency. (Rec. Doc. No. 6-7).
>
> February 8, 2015 - Vicks complained of sores on his body that he believed required medical attention. (Rec. Doc. No. 6-8).
>
> February 10, 2015 - Vicks complained of sores that required attention. (Rec. Doc. No. 6-9).
>
> Undated Form - Vicks requested that he have blood work done. (Rec. Doc. No. 6-10).
>
> February 15, 2015 - Vicks asked to be checked for high blood pressure. (Rec. Doc. No. 6-11).
>
> February 16, 2015 - Vicks asked to see a doctor about his blood pressure. (Rec. Doc. No. 6-12).
>
> March 1, 2015 - Vicks asked to see doctor about his sores and HIV condition. He also indicated that he complained to the nurses six times about chemicals being used in the prison. (Rec. Doc. No. 6-13).
>
> March 22, 2015 - Vicks stated that he thinks his body is rejecting the "shoots" and has blood in his urine and pain when he urinates. (Rec. Doc. No. 6-14).
>
> March 29, 2015 - Vicks complained that he had an infection in his nose and his hands had oozing blisters. (Rec. Doc. No. 6-15).

---

[7]Rec. Doc. No. 6-4, p.1, Second Step Response dated 3/30/15.

> April 16, 2015 - Vicks complained of pain in the back, shoulders, elbows, hips, and knees. He also indicated that he was throwing up, tired, and unable to have a bowel movement. (Rec. Doc. No. 6-16).
>
> April 20, 2015 - Vicks asked to have a CTscan of his head because he had shocking impulses through his nerves for no reason. (Rec. Doc. No. 6-17).

As a result of being given the wrong medication, Vicks seeks compensatory damages of $25,000 and punitive damages in the amount of $10,000 and any other appropriate relief.

### B. The *Spears* Hearing

Vicks testified that he is at RCC serving a thirty year sentence for manslaughter. He stated that between January 14 and 20, 2015, he received the wrong medication for his HIV+ condition. He could not recall the names of the medications, but the pill he was given was white, and his prescribed medication was pink and blue. During that time, he claims that he was not feeling well, including symptoms of diarrhea, high blood pressure, nausea, vomiting and headaches. On January 20, 2015, he checked with the HIV coordinator, Leslie Temples, and she determined that he was receiving the wrong medication and removed it from the pill cart.

Vicks further stated that one month later, on February 20, 2015, he became ill with a temperature of one-hundred degrees. He asked an inmate to call for the tier lieutenant because he began throwing up blood. He was taken to the LSU Medical Center in Bogalusa, Louisiana, where he was treated for Type B flu[8] and high blood pressure. Upon his return to the jail, he stayed in the infirmary for observation until February 22, 2015.

Vicks testified that he believes that the wrong medication reduced his immune system's resistance and that is why he caught the flu one month later. He stated, however, that as of

---

[8] Type B flu is an influenza virus that only effects humans and causes less severe reactions than the Type A flu viruses. http://www.webmd.com/cold-and-flu/.

4

February 26, 2015, his HIV was under control and his T-cells[9] and CD4 count[10] were good. He also believes that his health decline since having the flu has caused him to have headaches and nerve problems.

In addition, Vicks asserts that he rarely gets to see an actual doctor and has been prescribed antibiotics by a prison doctor without ever seeing that doctor (who he concedes was not Dr. McVea). He claims that, prior to the flu incident, he submitted about sixteen sick call requests for different ailments but was only seen by the EMTs at the jail. He would be referred to the doctor but never saw Dr. McVea or any other doctor until he got sick with the flu.

Vicks stated that he is not sure how he was given the wrong medication, and that Leslie Temples was supposed to sign-off on all medication that was to be on his cart. He was only supposed to get what his regular doctors prescribed.

Overall, Vicks complained that his condition has worsened during his time at RCC. He indicates that he does not believe he is getting the best of medical care for his HIV and other symptoms and is now on a walker at the age of 37. However, he made very clear that the fact that he is on a walker is not related to the incident in this lawsuit.

Vicks further stated that he has recurring headaches and regular diarrhea, which his HIV doctor said may be caused by the medication he now is taking for HIV. He said that he also is now having trouble breathing, although the nurse who checked him just before the *Spears* Hearing did not hear anything wrong with his lungs.

---

[9]A T-cell is a type of white blood cell that is of key importance to the immune system's reaction to specific pathogens. http://www.medicinenet.com/.

[10]The CD4 count measures the number of CD4 white blood cells and helps determine how strong the immune system is, the stage of the HIV virus, the treatment warranted, and the progression of the disease. A high CD4 count can reduce complications of HIV disease and extend life. http://www.webmd.com/hiv-aids/.

## II.     Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.   The Court has broad discretion in determining the frivolous nature of the complaint.   *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).   However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.   *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).   "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).   It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).   Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.   *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Analysis

Vicks alleges that between January 14 and January 20, 2015, he was accidently given the wrong HIV medication, identified in the records as Norvir.   Although his complaints to the Court

have varied, he originally alleged that the wrong medication cause him to have sores.  At the *Spears* Hearing, he made no mention of sores and instead claims that since taking the wrong medicine, he has had various medical conditions, including bouts of diarrhea, headaches, the flu and more recently, nerve shocks and numbness.   When asked at the *Spears* Hearing why he sued Dr. McVea, Vicks stated only that he did not get to see Dr. McVea before or after the medication incident.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104.  This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).   In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety

could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk."  *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).

Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not.  *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).   In addition, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.  *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In Vicks's case, while no doubt his HIV+ condition is a serious one, he has failed to establish that the defendants acted with an intentional indifference to his medical needs.  Initially, Vicks has failed to allege that Dr. McVea had any role in the wrong medicine incident.  Dr. McVea could not have been intentionally indifferent to his needs at that time.  Instead, Vicks has failed to identify any constitutional violation by Dr. McVea, and the doctor cannot be held liable

for the actions of the other medical staff personnel.  *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").  The claims against Dr. McVea are frivolous and otherwise fail to state a claim for which relief can be granted.

Next, Vicks recognizes that the added wrong medication was given to him in error, and concedes that Nurse Temples and the other prison medical officials immediately corrected the error.  The prison officials' responses to his grievance complaint also indicate that measures were put in place to prevent the reoccurrence of the mistake.  Vicks allegations of negligence or even malpractice by a medical care provider are insufficient to establish the level of deliberate indifference necessary to state a claim under § 1983.  *See Zaunbrecher v. Gaudin*, 641 F. App'x 340, 344-45 (5th Cir. 2010) (citing *Gobert*, 463 F.3d at 346, 351 & *Domino*, 239 F.3d at 756) (reiterating the "laundry list of acts and omissions that are insufficient to establish deliberate indifference").  The fact that Vicks was erroneously given the medication does not rise to the level of a constitutional violation. S*ee Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (being prescribed the wrong medication did "not support a finding of deliberate indifference under the Eighth Amendment"); *Green v. Ross*, 398 F. App'x 2, 4 (5th Cir. 2010) (allegations that a nurse negligently and carelessly gave the plaintiff the wrong medication were properly dismissed).

Vicks also claims that he has suffered numerous ailments since taking the wrong medication.  His pleadings and his testimony present different time frames for his various ailments and disparate pictures of his alleged decline, with no mention of the flu anywhere in his pleadings or of nausea or diarrhea while taking the wrong medication.  Nevertheless, even if the

9

Court accepts the claims of health related side-effects and assumes that they are related to his taking the wrong medication, Nurse Temples's "negligence - or even gross negligence amounting to malpractice" in allowing him to be given the wrong medication does not support a claim of intentional indifference under § 1983. *Richardson v. Blake*, No. 09-1649, 2009 WL 5585131, at *4 (W.D. La. Dec. 21, 2009) (no intentional indifference when inmate erroneously was given medication to which he was allergic that caused fatigue, hives, nausea, dizziness, headache, heartburn, itching and inflammation of the sinus), *adopted by* 2010 WL 331751, at *1 (W.D. La. Jan. 20, 2010). Vicks has failed to allege a non-frivolous claim against Nurse Temples arising from his taking the wrong medication.

Finally, under a broad interpretation, Vicks also claims that, as a general rule, he is not provided with the medical care he believes he should receive for his HIV and is not allowed to see the prison doctors on a regular basis. These general allegations also fail to set forth a claim of intentional indifference under the Eighth Amendment.

The Constitution requires that prisoners receive adequate and "not optimal" medical treatment. *Spriggens v. LaRavia*, No. 11-2266, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012). It is not the role of this Court to second guess the medical decisions and treatment he is provided simply because Vicks is disappointed in his progress or decline as it may be. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). An inmate like Vicks must establish more than just a disagreement with the level of care he is receiving even if the care he is receiving is unsuccessful. *Davidson v. Tex. Dept. of*

*Crim. Justice*, 91 F. App'x 963, 965 (5th Cir. 2004) (citing *Stewart*, 174 F.3d at 534 & *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

Vicks concedes that he is seen by medical personnel every time he requests treatment. He mentioned that he has a treating HIV specialist with whom he interacts over the tele-med system. He acknowledges that he has received regular treatment and review from Dr. McVea and other doctors at the prison, although he is not pleased with the lapse of time between the appointments scheduled for him. Nevertheless, even if the nurses and EMTs should attempt to send him to the doctor more frequently, the delays he mentions of four to six weeks to see the doctors for his non-emergency complaints are normal delays even for those in the free-world and are insufficient to establish a constitutional violation. *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) (citing *Gobert*, at 346).

For the foregoing reasons, Vicks has failed to allege a constitutional violation arising out of the medical care he receives or as a result of having taken the wrong medication between January 14 and January 20, 2015. His claims against Dr. McVea and Nurse Temples should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1915e.

## IV. Recommendation

It is therefore **RECOMMENDED** that Vicks's § 1983 claims against Dr. McVea and Nurse Temples be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[11]

New Orleans, Louisiana, this 21st day of September, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.